Plainview Props. SPE, LLC v County of Nassau (2020 NY Slip Op 01654)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Plainview Props. SPE, LLC v County of Nassau

2020 NY Slip Op 01654

Decided on March 11, 2020

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 11, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department
RUTH C. BALKIN, J.P.
JOHN M. LEVENTHAL
ROBERT J. MILLER
LINDA CHRISTOPHER, JJ.


2017-09302
(Index No. 5798/10)

[*1]Plainview Properties SPE, LLC, as successor in interest to Plainview Properties, LLC, et al., respondents,
vCounty of Nassau, appellant.

Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains, NY (Eliza M. Scheibel and Janine A. Mastellone of counsel), for appellant.
Renzulli Law Firm, LLP, White Plains, NY (Christopher Renzulli, John V. Tait, and Howard B. Schilsky of counsel), for respondents.

DECISION & ORDER
In an action, inter alia, pursuant to Navigation Law § 181 to recover damages resulting from the defendant's alleged discharge of petroleum, the defendant appeals from an order of the Supreme Court, Nassau County (James P. McCormack, J.), entered July 12, 2017. The order, insofar as appealed from, denied those branches of the defendant's motion which were for summary judgment dismissing the first, third, fourth, sixth, seventh, ninth, tenth, and eleventh causes of action.
ORDERED that the order is affirmed insofar as appealed from, with costs.
In 1999, the defendant sold a complex of buildings, and, that same year, leased back some of those buildings from Plainview Properties, LLC. A single network of pipes distributed fuel oil used for heating from a storage tank on the defendant's leased premises to some of the defendant's leased buildings. There is no dispute that the network once serviced Building J, a presently unused structure in the complex which was not leased back to the defendant. In early 2009, the defendant discovered that thieves had stolen the copper fuel distribution pipes in the basement of Building J, causing some amount of fuel oil to spill out. Plainview Properties SPE, LLC, as successor in interest to Plainview Properties, LLC, and Commerce and Industry Insurance Company, as subrogee of Plainview Properties, LLC (hereinafter together the plaintiffs), commenced this action against the defendant. The amended complaint asserts 11 causes of action, primarily to recover damages relating to the spill. The defendant moved for summary judgment dismissing the amended complaint. By order entered July 12, 2017, the Supreme Court, among other things, denied those branches of the defendant's motion which were for summary judgment dismissing the first, third, fourth, sixth, seventh, ninth, tenth, and eleventh causes of action. The defendant appeals, and we affirm.
In the first cause of action, the plaintiffs seek to recover costs and damages pursuant to Navigation Law § 181(1), which provides that "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages." "A discharge' is . . . defined as any intentional or [any] unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of [*2]petroleum into the waters of the state or onto lands from which it might flow or drain into said waters,'" including groundwater (Zinke v Pacific Energy Corp., 146 AD3d 923, 924, quoting Navigation Law § 172[8]; see Navigation Law § 172[18]). Injured parties may assert a claim for damages directly against "the person who has discharged the petroleum" (Navigation Law § 181[5]; see White v Long, 85 NY2d 564, 569). A "faultless property owner" may maintain such a claim "against any other party who actually caused or contributed to the discharge" (Nappi v Holub, 79 AD3d 1110, 1112; see Navigation Law § 172[3]).
In support of its motion, the defendant submitted evidence showing that the discharge occurred when thieves severed pipes in an unused structure belonging to the plaintiffs, releasing heating oil that had been trapped inside since those pipes were "capped" and isolated from the active portions of the fuel oil distribution system. The defendant submitted the parties' lease and purchase agreements showing, in its view, that the plaintiffs took Building J "as is" and that they were solely responsible for keeping it and its fixtures in good repair. The defendant also submitted evidence indicating that only a small amount of petroleum products were recovered from the basement immediately following the discharge and that the subsurface contaminants discovered later exhibited features more consistent with older spills than a large spill occurring in 2009. The defendant thereby made a prima facie showing of entitlement to judgment as a matter of law dismissing the first cause of action (see C & J Cleaners v GACO Fashioned Furniture, Inc., 85 AD3d 1079, 1079-1080).
The plaintiffs, however, raised triable issues of fact in opposition to this showing. Specifically, the plaintiffs' evidence could support the conclusion that the defendant used the pipes beneath Building J as part of the active fuel distribution system, and that a large quantity of fuel oil spilled out of those pipes when the defendant twice filled a storage tank under its control in an effort to restore heat to the leased portions of the complex. Most of the discharged fuel oil either seeped into the soil under and around Building J or flowed down a drain leading to a drywell on the leased premises. The plaintiffs' experts identified a large, slow-moving plume of fuel oil contaminants drifting in a direction consistent with the "historical hydraulic gradient," and they identified numerous flaws in the methodology the defendant's experts relied upon to date the contamination to some earlier spill. In addition, one of the plaintiffs' experts identified a particular "T-joint" on the leased premises that the defendant could have capped and thereby prevented the alleged discharges. As this evidence could support the conclusions that the plaintiffs were faultless landowners and that the defendant was a discharger, we agree with the Supreme Court's determination to deny that branch of the defendant's motion which was for summary judgment dismissing the first cause of action.
We also agree with the Supreme Court's determination that triable issues of fact existed with respect to the third cause of action, which alleged breach of contract. " The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach'" (Reznick v Bluegreen Resorts Mgt., Inc., 154 AD3d 891, 893, quoting Canzona v Atanasio, 118 AD3d 837, 838). The parties' lease prohibits the defendant from causing injury to the "Premises" and imposes upon the defendant the "sole responsibility" to maintain the "Premises." The lease defines "Premises" in a way that includes more than just physical spaces the defendant is entitled to occupy. Specifically, the defendant's duty to maintain the "Premises" extends to "any and all fixtures" that are "used in connection with the operation, use or occupancy" of the premises, "and the appurtenances thereto." While these terms are ambiguous, the defendant's evidence of the spill being limited to a space outside the demised premises and resulting from the condition of pipes it did not use in connection with its use and occupancy was sufficient to satisfy its prima facie burden. In opposition, however, the plaintiffs' evidence showed that the defendant routinely used the pipes in question to send fuel oil to buildings it did occupy. The pipes could therefore be considered fixtures used in the connection with the use or occupancy of the demised premises or appurtenances thereto. In addition, the plaintiffs' experts traced the flow of fuel oil from the severed pipe in the basement of Building J down a drain and into a drywell, causing injury to an area unambiguously within the demised premises. The Supreme Court therefore properly denied that branch of the defendant's motion which was for summary judgment dismissing the third cause of action (see Vale v 221 Thompson, LLC, 82 AD3d 754, 754).
These same ambiguous terms and triable issues of fact underlie the causes of action for contractual indemnification and for a judgment declaring the rights and obligations of the parties under the lease. Consequently, we agree with the Supreme Court's denial of those branches of the defendant's motion which were for summary judgment dismissing the ninth and eleventh causes of action.
With respect to the fourth cause of action, "[t]o hold a defendant liable in common-law negligence, a plaintiff must show that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the injury" (Federico v Defoe Corp., 138 AD3d 682, 684). Contrary to the defendant's contention, it had a duty to exercise reasonable care in the maintenance of the leased premises to prevent foreseeable injury that might occur on the plaintiffs' adjoining property (see Broxmeyer v United Capital Corp., 79 AD3d 780, 782). Moreover, while the defendant satisfied its prima facie burden with evidence showing that it did not breach its duty to the plaintiffs or proximately cause their alleged injuries, the plaintiffs raised triable issues of fact with respect to these elements in opposition. In addition to the evidence of the defendant's routine use of the pipes running beneath the unused structure and ability to prevent the spill by capping a particular T-joint on the leased premises, the plaintiffs submitted evidence showing that the defendant received a complaint about fuel odors emanating from the complex after the fuel oil from its first delivery unexpectedly went missing and before it accepted its second delivery of fuel oil. Accordingly, we agree with the Supreme Court's determination to deny that branch of the defendant's motion which was for summary judgment dismissing the fourth cause of action.
These same triable issues of fact as to the parties' fault and the extent of the plaintiffs' injuries also warranted denial of those branches of the defendant's motion which were for summary judgment dismissing the sixth and tenth causes of action, which sounded in restitution and common-law indemnification, respectively (see Kingsbrook Jewish Med. Ctr. v Islam, 172 AD3d 1342, 1343). Moreover, the plaintiffs' evidence of the defendant's intentional act of sending fuel oil through pipes on the leased premises twice resulting in the emission of fuel oil onto the plaintiffs' property supported the Supreme Court's denial of that branch of the defendant's motion which was for summary judgment dismissing the seventh cause of action, which sounded in trespass (see Zimmerman v Carmack, 292 AD2d 601, 602).
BALKIN, J.P., LEVENTHAL, MILLER and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court